222 P.3d 785 (2009)
Kent DUCOTE, Petitioner,
v.
STATE of Washington, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
No. 81714-6.
Supreme Court of Washington, En Banc.
Argued May 28, 2009.
Decided December 17, 2009.
*786 Catherine Wright Smith, Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Seattle, WA, Carla Jean Higginson, Attorney at Law, Friday Harbor, WA, for Petitioner.
Catherine Hendricks, Attorney General's Office, Seattle, WA, Michael Patrick Lynch, Attorney General's Office, Olympia, WA, for Respondent.
Stewart Andrew Estes, Keating Bucklin & McCormack, Seattle, WA, amicus counsel for Washington Association of Sheriffs and Police Chiefs.
FAIRHURST, J.
¶ 1 Kent Ducote was barred from his home and from contact with his stepchildren after his stepdaughter alleged he engaged in sexual misconduct toward her. Following a lengthy dependency hearing, the trial court ultimately determined the allegations were not supported by the evidence and Ducote was allowed to return home.
¶ 2 Ducote asks this court to hold that stepparents have standing to bring a claim of negligent investigation against the Department of Social and Health Services (DSHS) pursuant to RCW 26.44.050. We decline.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 3 Ducote married Dixie Ducote in 1994 and is the stepfather of her three children, Brittney, Cole, and Morgan. In spring 2000, Brittney, then 14 years old, told her middle school counselor that her stepfather struck her younger brother Cole, entered the bathroom while Brittney was on the toilet, and forced Brittney to sit on his lap and touched her buttocks. Approximately one week later, Brittney repeated these allegations to David Parks, a DSHS social worker. Brittney additionally alleged to Parks that she had seen Ducote watching her disrobe through her bedroom window.
¶ 4 Based on Brittney's allegations, DSHS placed her in emergency, temporary shelter care and filed dependency petitions for all three children. On April 13, 2000, the superior court ordered Brittney removed from the family home, barred Ducote from the family home and from having contact with his three stepchildren, and prohibited Dixie from leaving the county with the children.
¶ 5 At the dependency hearing, approximately six months later, the trial court determined that Brittney's allegations were not supported by the evidence, that Dixie was capable of adequately caring for her children, and that Brittney, Cole, and Morgan did not qualify as abused or neglected children. The trial court lifted its earlier orders restricting Ducote's contact with Cole and Morgan and prohibiting him from entering the family home.
¶ 6 Ducote subsequently filed a complaint for damages against the State of Washington, DSHS, alleging negligent investigation. In a motion for summary judgment, the State argued DSHS did not owe stepparents a duty of care under RCW 26.44.050 because they were not within the class of persons for whose especial benefit the statute was enacted. The State argued that a claim for negligent investigation is limited to children, parents, guardians, and custodians. The trial court agreed and granted summary judgment.
¶ 7 The Court of Appeals affirmed, holding the class of persons to whom DSHS owes a duty of care under RCW 26.44.050 is found in RCW 26.44.010 and does not include stepparents. Ducote v. Dep't of Soc. & Health Servs., 144 Wash.App. 531, 536, 186 P.3d 1081 (2008). Ducote asks this court to reverse the Court of Appeals and remand his negligent investigation claim to the superior court for trial. We granted review. Ducote *787 v. Dep't of Soc. & Health Servs., 164 Wash.2d 1014, 196 P.3d 130 (2008).

II. ISSUE
¶ 8 Whether a stepparent may bring a claim for negligent investigation under RCW 26.44.050.

III. ANALYSIS
¶ 9 When reviewing dismissal of a case on summary judgment, we employ the same inquiry as the trial court under CR 56(c). M.W. v. Dep't of Soc. & Health Servs., 149 Wash.2d 589, 595, 70 P.3d 954 (2003). We review only those issues raised by the parties and considered by the trial court. Babcock v. State, 116 Wash.2d 596, 606, 809 P.2d 143 (1991) (citing RAP 12.1(a); State v. Hubbard, 103 Wash.2d 570, 573-74, 693 P.2d 718 (1985)).[1]
¶ 10 RCW 26.44.050 requires DSHS to investigate allegations of child abuse:
Upon the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department of social and health services must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court.
A law enforcement officer may take, or cause to be taken, a child into custody without a court order if there is probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order pursuant to RCW 13.34.050. The law enforcement agency or the department of social and health services investigating such a report is hereby authorized to photograph such a child for the purpose of providing documentary evidence of the physical condition of the child.
¶ 11 Neither the text of RCW 26.44.050 nor any other part of chapter 26.44 RCW explicitly includes a claim for negligent investigation. Such claims also do not exist under common law in Washington. Pettis v. State, 98 Wash.App. 553, 558, 990 P.2d 453 (1999) ("In general, a claim for negligent investigation does not exist under the common law of Washington. That rule recognizes the chilling effect such claims would have on investigations.") (citing Corbally v. Kennewick Sch. Dist., 94 Wash.App. 736, 740, 973 P.2d 1074 (1999)). Although neither the text of RCW 26.44.050 nor common law provides a cause of action for negligent investigation, this court implied such a cause of action for parents suspected of child abuse in Tyner v. Department of Social & Health Services, 141 Wash.2d 68, 82, 1 P.3d 1148 (2000).
¶ 12 Where appropriate, a cause of action may be implied from a statutory provision when the legislature creates a right or obligation without a corresponding remedy. Bennett v. Hardy, 113 Wash.2d 912, 920, 784 P.2d 1258 (1990). To determine whether it is appropriate to imply a cause of action, we use a three-part test: "first, whether the plaintiff is within the class for whose `especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." Id. at 920-21, 784 P.2d 1258 (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1353 (9th Cir. 1987)). The first part of the Bennett test, whether the plaintiff is within the class for whose especial benefit the statute was enacted, is the most important for deciding this case.
*788 ¶ 13 As discussed in Tyner, RCW 26.44.050 only articulates a general duty to investigate child abuse. Therefore, to determine whether a parent is within the class for whose especial benefit the statute was enacted, we looked to chapter 26.44 RCW. Tyner, 141 Wash.2d at 78, 1 P.3d 1148; Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 475, 951 P.2d 749 (1998) ("We look to the language of the statute to ascertain whether the plaintiff is a member of the protected class."). RCW 26.44.010 describes the purpose of the child abuse chapter as prevention of child abuse without unnecessarily interfering with "[t]he bond between a child and his or her parent, custodian, or guardian." (Emphasis added.) Accordingly, we concluded parents fell within the class for whose especial benefit RCW 26.44.050 was enacted. Tyner, 141 Wash.2d at 80, 1 P.3d 1148.
¶ 14 At issue in this case is whether Ducote, as a stepparent, falls within the class of persons protected by RCW 26.44.050. RCW 26.44.010 does not designate the bond between a child and his or her stepparent or other family member as one entitled to this same protection.[2] Because the legislature did not designate stepparents as members of the class protected by RCW 26.44.050, Ducote does not have standing to bring a negligent investigation claim. Adams v. King County, 164 Wash.2d 640, 650, 192 P.3d 891 (2008) ("This court recognizes that `[o]missions are deemed to be exclusions.'" (alteration in original) (quoting In re Det. of Williams, 147 Wash.2d 476, 491, 55 P.3d 597 (2002))).
¶ 15 Aware that he does not qualify as a parent, guardian, or custodian, Ducote argues instead that our broad language in Tyner regarding the State's "duty to act reasonably in relation to all members of the family" created a cause of action for negligent investigation for any member of the family. Tyner, 141 Wash.2d at 79, 1 P.3d 1148 (emphasis added). Ducote is correct that our opinion in Tyner contains a handful of expansive references to "family." However, the plaintiff in Tyner was a parent, and when the opinion is read in its entirety, it is clear that the court was considering only whether a cause of action existed for the plaintiff in that case. Id. at 82, 1 P.3d 1148 ("We conclude that under RCW 26.44.050, CPS owes a duty of care to a child's parents, even those suspected of abusing their own children, when investigating allegations of child abuse.").
¶ 16 This case offers us the opportunity to clarify who, other than parents, are in the class of persons who may sue for negligent investigation under RCW 26.44.050. Consistent with the test articulated in Bennett, we confirm that the class of persons who may sue for negligent investigation is limited to those specifically mentioned in RCW 26.44.010, namely, parents, custodians, and guardians, and the child or children themselves. See Pettis, 98 Wash.App. 553, 990 P.2d 453; see also Blackwell v. Dep't of Soc. & Health Servs., 131 Wash.App. 372, 127 P.3d 752 (2006).
¶ 17 Ducote also argues case law interpreting RCW 26.44.050 supports including stepparents within the class of persons with standing to bring a claim for negligent investigation. Ducote relies on Babcock, M.W., and Roberson v. Perez, 156 Wash.2d 33, 123 P.3d 844 (2005). In Babcock, we examined whether DSHS and its caseworkers have absolute immunity from liability for negligent foster care placement. 116 Wash.2d at 598, 809 P.2d 143. Although the plaintiffs included the children's grandparents, their standing to bring an action was not an issue before this court. In M.W., we examined the scope of the injury contemplated by the legislature and did not extend the scope of RCW 26.44.050 to any injury that harmed the family unit as implied by Ducote. M.W., 149 Wash.2d at 597, 70 P.3d 954. In Roberson, we examined whether a parent's preemptive placement of her own child with a relative *789 constituted a harmful placement decision. 156 Wash.2d at 46-47, 123 P.3d 844. The status of the plaintiffs was not at issue, and our opinion does not refer to the status of the stepfather except to describe the family as a mother, her son, and her husband. Id. at 36, 123 P.3d 844. These cases, therefore, do not support extending the scope of the State's duty under RCW 26.44.050.
¶ 18 Finally, in Zellmer v. Zellmer, 164 Wash.2d 147, 169, 188 P.3d 497 (2008), we recently held the parental immunity doctrine applied to stepparents standing in loco parentis. In that case, we traced the doctrine's evolution in this state and in our sister states, examined policy arguments, and held we would not eliminate or limit the doctrine. Id. at 154-61, 188 P.3d 497. We concluded that because the doctrine was designed to protect parents' discretion to raise their children without undue interference, its protection should extend to stepparents who are engaged in the education and discipline of their stepchildren. Id. at 164-65, 188 P.3d 497. We ultimately found "no principled distinction between a legal parent and a stepparent who assumes all the obligations and exercises all the responsibilities of parenthood, as the public policy reasons supporting immunity for a biological or adoptive parent apply equally to one standing in loco parentis." Id.
¶ 19 In Zellmer, however, we reexamined and explored a common law doctrine. We did not engage in the statutory construction required by the Bennett test for implied causes of action. Implied causes of action are based upon the assumption that "`the legislature would not enact a remedial statute granting rights to an identifiable class without enabling members of that class to enforce those rights.'" Bennett, 113 Wash.2d at 919-20, 784 P.2d 1258 (quoting McNeal v. Allen, 95 Wash.2d 265, 277, 621 P.2d 1285 (1980) (Brachtenbach, J., dissenting)). Although the remedy is implicit, the right and the recipients of the right are explicit. Thus, the Bennett test asks whether a remedy can be implied from legislative intent and whether implying a remedy is consistent with the purpose of the legislation, but, when determining standing, asks "whether the plaintiff is within the class for whose `especial' benefit the statute was enacted." Id. at 920, 784 P.2d 1258. Although we may imply a remedy, we look to the language of the statute to determine to whom the remedy is available. Id. at 920-21, 784 P.2d 1258.
¶ 20 As discussed above, we draw our class of plaintiffs from RCW 26.44.010, which does not include stepparents. If the legislature wishes to expand the class of plaintiffs able to bring a claim for negligent investigation under RCW 26.44.050, it is free to revise the statute.

IV. CONCLUSION
¶ 21 A cause of action for negligent investigation against DSHS does not exist at common law and is not explicitly stated in RCW 26.44.050. Instead, it is a cause of action implied through the Bennett test. The Bennett test looks to the language of the statute to determine to whom an implied remedy is available. In this instance, a cause of action for negligent investigation under RCW 26.44.050 is limited by RCW 26.44.010 to parents, custodians, guardians, and children.
¶ 22 Although many stepparents have strong and rich relationships with their stepchildren, and may have greater rights and responsibilities with respect to their stepchildren than many other classes of persons, they are not included in the categories of persons who may sue for negligent investigation under RCW 26.44.050. We affirm the Court of Appeals.
WE CONCUR: CHARLES W. JOHNSON, BARBARA A. MADSEN, SUSAN OWENS, JAMES M. JOHNSON, JJ., and KAREN G. SEINFELD, Justice Pro Tem.
CHAMBERS, J. (dissenting).
¶ 23 I would hold that a stepparent who has lived in the family home long enough to become an integral part of the family and who contributes to the well being of the family is entitled to bring a claim of negligent investigation against the Department of Social and Health Services. The trial court dismissed this case at summary judgment, *790 ruling that stepparents did not have a cause of action because stepparents are not explicitly listed as having interests worthy of protection under chapter 26.44 RCW. The majority goes a step further and finds that stepparents lack standing. But RCW 26.44.010 specifically recognizes the legitimate interests of parents, custodians, and guardians. These ordinary, undefined terms should be given their plain and common meaning unless a contrary legislative purpose appears. In re Pers. Restraint of Skylstad, 160 Wash.2d 944, 956, 162 P.3d 413 (2007) (citing Ravenscroft v. Wash. Water Power Co., 136 Wash.2d 911, 920, 969 P.2d 75 (1998)). I find no contrary legislative purpose. Because the majority does, I respectfully dissent.
¶ 24 Chapter 26.44 RCW protects both children and their families. Tyner v. State Dep't of Soc. & Health Serv., 141 Wash.2d 68, 78, 80, 1 P.3d 1148 (2000) (citing RCW 26.44.010, .050). The legislature has, rightly, found these interests inextricable. "The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian." RCW 26.44.010. We found that RCW 26.44.050 creates an implied clause of action for negligent investigation of child abuse, because that cause of action helps to protect those legislative purposes. Tyner, 141 Wash.2d at 80, 1 P.3d 1148 ("Thus, by recognizing the deep importance of the parent/child relationship, the Legislature intends a remedy for both the parent and the child if that interest is invaded."). Given the policies underlying chapter 26.44 RCW, recognizing that some stepparents are also protected by the implied cause of action is simple common sense. A negligent investigation of a stepparent who is integrated into the child's life and home will be just as disruptive to the child and the family as a negligent investigation of a parent whose legal rights have already been formally established.
¶ 25 The majority's technical approach is also inconsistent with the principles underlying our recent opinion in Zellmer v. Zellmer, 164 Wash.2d 147, 188 P.3d 497 (2008). There we held that a stepparent who stands in loco parentis to a child is entitled to the same parental immunity as a legal parent. Id. at 151, 188 P.3d 497. We found "no principled distinction between a legal parent and a stepparent who assumes all the obligations and exercises all the responsibilities of parenthood, as the public policy reasons supporting immunity for a biological or adoptive parent apply equally to one standing in loco parentis." Id. at 164-65, 188 P.3d 497. I see no reason why that same principle should not apply here. The majority's approach is also inconsistent with Tyner. Tyner recognized that "[t]he procedural safeguards of RCW 26.44.050 protect both children and family members; children are protected from potential abuse and needless separation from their families and family members are protected from unwarranted separation from their children." Tyner, 141 Wash.2d at 79, 1 P.3d 1148. This separation could be just as devastating when it is a stepparent as a natural, de facto, or adoptive one. Finally, it is inequitable to create a system where stepparents have legally enforceable obligations toward children without the State having a legally enforceable duty of care when interfering with their lives because of those very children. See former RCW 26.16.205 (1990) ("The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and they may be sued jointly or separately.").
¶ 26 I agree with the majority that it would not serve the statutory purposes to extend this cause of action to all stepparents. I would limit this cause of action to a stepparent who resided with the family long enough to have become an integral part of that family and who has contributed to the well being of the family. Cf. Zellmer, 164 Wash.2d 147, 188 P.3d 497. In my view, whether a stepparent qualifies should be treated as a question of fact to be determined based on the individual family situation. Here, the plaintiff's case was dismissed merely because he was a stepparent. That is inconsistent with RCW 26.44.010, .050, Tyner and Zellmer.
¶ 27 Based ultimately on the wording of a dissent, the majority contends that "[a]lthough *791 the remedy is implicit, the right and recipients of the right are explicit." Majority at ___. But the statute is not so cramped. It uses ordinary terms that ordinarily would be understood to include a stepparent who is well integrated into the child's family.
¶ 28 I respectfully dissent.
WE CONCUR: RICHARD B. SANDERS and DEBRA L. STEPHENS, JJ.
NOTES
[1] After the trial court dismissed his case on summary judgment, Ducote filed a motion for reconsideration in which he argued he had standing as a de facto parent. The trial court denied the motion because the issue of whether Ducote was a de facto parent had not been raised prior to summary judgment. The Court of Appeals, in the unpublished portion of its opinion, rejected Ducote's de facto parent argument for the same reason. Ducote, noted at 144 Wash.App. at 537, ¶ 17, 186 P.3d 1081 (unpublished portion). Although Ducote states in his petition for review that the Court of Appeals erred when it refused to consider his standing as a de facto parent, he did not include de facto parentage as an issue or provide legal support for his argument. We decline to consider the issue.
[2] Stepparents are not defined in the chapters governing dependency proceedings or investigations of child abuse; rather, they are defined in the context of support for dependent children: "`Stepparent' means the present spouse of the person who is either the mother, father, or adoptive parent of a dependent child, and such status shall exist until terminated as provided for in RCW 26.16.205." RCW 74.20A.020(8). Notably, stepparents are defined by their relationship to the child's parent, not the child.