**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NISQUALLY INDIAN TRIBE,
   *Plaintiff-Appellant,*

v.

CHRISTINE O. GREGOIRE, Governor
of the State of Washington;
CHAIRMAN DAVID LOPEMAN;
ARNOLD COOPER; VINCENT HENRY;
RUSSELL HARPER; MISTI SAENZ-
GARCIA; MARCELLA CASTRO;
CHARLENE KRISE; DEBORAH STOEHR;
THERESA BRIDGES,
   *Defendants-Appellees,*

SQUAXIN ISLAND TRIBE; FRANK'S
LANDING INDIAN COMMUNITY,
   *Defendant-intervenors-*
    *Appellees.*

No. 09-35725

D.C. No.
3:08-cv-05069-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
July 14, 2010—Seattle, Washington

Filed October 4, 2010

Before: Pamela Ann Rymer and N. Randy Smith, Circuit
Judges, and William T. Hart, Senior District Judge.*

*The Honorable William T. Hart, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

16707

Opinion by Judge N.R. Smith

**COUNSEL**

Malcom S. Harris, Harris, Mericle & Wakayama, Seattle Washington and Glenn M. Feldman, Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, Arizona, for plaintiff-appellant Nisqually Indian Tribe.

Keith M. Harper, Kilpatrick Stockton, LLP, Washington, D.C., and Adam H. Charnes, Kilpatrick Stockton, LLP,

Winston-Salem, North Carolina, for defendant-appellees Frank's Landing Indian Community and Theresa Bridges.

Kevin R. Lyon and Nathan E. Schreiner, Squaxin Island Legal Department, Shelton, Washington, for defendant-appellee David Lopeman.

Robert M. McKenna, Attorney General, Robert K. Costello, Deputy Attorney General, Cameron G. Comfort, Senior Assistant Attorney General, and Heidi A. Irvin, Assistant Attorney General, Olympia, Washington, for defendant-appellee Christine Gregoire.

## OPINION

SMITH, Circuit Judge:

The Nisqually Indian Tribe ("Nisqually") challenges an agreement between the Frank's Landing Indian Community (the "Community"), the Squaxin Island Indian Tribe[1] ("Squaxin"), and the State of Washington[2] ("Washington" or the "State") governing taxation of cigarettes at Frank's Landing. Nisqually brought suit claiming that Washington breached a contract with Nisqually by entering into the agreement with Squaxin and the Community, and further argues that the agreement violates various state and federal laws. With respect to Nisqually's attempts to enforce federal and

---

[1]The Squaxin Island Indian Tribe is not actually named as a party because of its sovereign immunity from suit. The Chairman of the Tribe was named as a party under the *Ex Parte Young* doctrine. 209 U.S. 123 (1908). For convenience as to which appellee represents the interests of the tribe, we refer to Appellee Lopeman, the Chairman of the Squaxin Island Indian Tribe, as "Squaxin."

[2]Washington State was not named as a party in this case; rather, the action was brought against Washington's governor, Christine Gregoire. Because Gregoire represents the interests of the State, we simply refer to her as the "State of Washington" in this opinion.

state law, we affirm the grant of summary judgment against Nisqually because the laws under which it sues provide no private right of action. We also affirm the district court's judgment denying Nisqually's breach of contract claim.

## FACTS AND PROCEDURAL HISTORY

A.  *Background*

Washington law applies state sales and use taxes to the sale of tobacco by Indian retailers to non-Indians, even when the sale takes place in Indian country.[3] Wash. Admin. Code 458-20-192(9)(a), (e). In practice, assessment and collection of these taxes has proven to be logistically difficult and has become a source of contention between the Indian tribes and the State. To address this issue, the State enacted a law allowing the governor to enter into contracts regarding tobacco taxation ("tobacco tax contracts") with certain enumerated, federally-recognized Indian tribes. Wash. Rev. Code § 43.06.455. Under these contracts, an Indian tribe can collect tribal taxes, in lieu of state and local sales and use taxes, when a tribal member retailer sells tobacco in Indian country. Wash. Rev. Code §§ 43.06.450-460. To retain this tax revenue, then, tribes must use the funds for "essential" government services. *Id.* § 43.06.455(8).

B.  *Description of the Parties*

Nisqually is a federally-recognized Indian tribe with reservation lands in Washington State. Nisqually has entered into a tobacco tax contract with the State government (the "Nisqually contract").

Squaxin is also a federally-recognized Indian tribe with res-

---

[3]Consistent with 18 U.S.C. § 1151, Washington law refers to Indian reservations, allotments, and dependent communities as "Indian country." *See* Wash. Admin. Code 458-20-192(2)(b).

ervation lands in the State of Washington. Squaxin entered into a tax contract with the State (the "Squaxin contract") that allowed Squaxin to tax tobacco sales by tribal retailers in "Indian country." The contract defined "Indian country" to include the Squaxin reservation and "allotments held in trust for a Squaxin Island tribal member."[4] In 2008, Washington and Squaxin executed an addendum to their contract (the "Addendum").

Frank's Landing is a geographic location consisting of three parcels of land, none of which is located on the Nisqually or Squaxin Reservations. The parcels are instead held in trust by the United States for the benefit of individually named Indians.[5] The three parcels were set aside for these individuals in 1918. The people, society, and government located at and associated with Frank's Landing are referred to as the "Community." The Community is not a federally-recognized Indian tribe; rather, it is a "self-governing dependent Indian Community."

Two federal statutes define the powers of the Community. First, in 1987, Congress passed Public Law Number 100-153 (the "1987 Act"), which states that the Community is "eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act." Indian Law Technical Amendments of 1987, Pub. L. No. 100-153, § 10, 101 Stat. 886 (1987). Later, in 1994, Congress passed Public

---

[4]One of the Frank's Landing allotments is held by Theresa Bridges ("Bridges"). Bridges was a member of the Pullyup Tribe, but also satisfied the membership criteria of the Squaxin Tribe. Bridges decided— apparently partially because of family connections and partially because of the potential for an agreement between Squaxin and the Community for cigarette sales—to join Squaxin. This required Bridges to relinquish her membership in the Pullyup Tribe.

[5]Bridges owns property in trust at Frank's Landing and was named as a party to the original lawsuit and this appeal. Since Bridges joins the Community's brief, and her interests appear identical, we do not refer separately to her in this opinion.

Law Number 103-435 (the "1994 Act"), which amended the 1987 Act, and states, in relevant part:

### RECOGNITION OF INDIAN COMMUNITY

(a) Subject to subsection (b), the Frank's [Landing Indian Community in the State of Washington is hereby recognized;] . . .

(1) as eligible [for the special programs and services provided by the United States to Indians because of their status as Indians and is recognized as eligible to contract, and to receive grants, under the Indian Self-Determination and Education Assistance Act for such services . . . ]; and . . .

(2) as a self-governing dependent Indian community that is not subject to the jurisdiction of any federally recognized tribe.

(b)(1) Nothing in this section may be construed to alter or affect the jurisdiction of the State of Washington [over criminal matters in Indian country] . . . .

(2) Nothing in this section may be construed to constitute the recognition by the United States that the Frank's Landing Indian Community is a federally recognized Indian tribe.

(3) Notwithstanding any other provision of law, the Frank's Landing Indian Community shall not engage in any class III gaming activity . . . .

Indians: Technical Corrections, Pub. L. No. 103-435, § 8, 108 Stat. 4566, 4569-70 (1994).

C.   *Tobacco Sales by Squaxin at Frank's Landing*

Cigarette sales at Frank's Landing have strained the Community's relationship with the State and nearby Indian tribes,

such as Nisqually. In particular, Nisqually claims tobacco sales at Frank's Landing directly reduce cigarette sales on the Nisqually Reservation, resulting in a loss of sales revenue to Nisqually. The different parties to this appeal have considered and attempted a number of solutions to this problem. At one time, the Community tried to contract directly with the State. However, because the Community was not a federally-recognized tribe, Washington declined to enter into a contract with the Community, citing the lack of authority to do so under state law. Nisqually proposed to the State that it could sell cigarettes at Frank's Landing under the Nisqually contract. The Community resisted this attempt by Nisqually.

This appeal centers on a solution to the problem of cigarette sales and taxes at Frank's Landing negotiated by Washington, the Community, and Squaxin (the "Agreement"). The parties entered into an agreement wherein Bridges leased part of her property, held in trust, to the Community. The Community, in turn, sub-leased the property to Squaxin for a retail store operated by Island Enterprises, a business wholly-owned by Squaxin. The Community, Squaxin, and Washington agreed that Island Enterprises could sell cigarettes under the Squaxin contract at Frank's Landing. The Agreement further provided that the Community would share in the revenue, and its share would be used (consistent with Washington law) for community purposes, including funding the Wa-He-Lut Indian School, which the Community established in 1974.

Squaxin and Washington subsequently executed the Addendum to further clarify that the Squaxin contract covered sales at Frank's Landing. The Addendum defined "Indian country" as:

> Public domain allotment lands when under a then existing agreement between the Squaxin Island Tribe and a Self-Governing Dependent Indian Community . . . that conveys interest to the Squaxin Island Tribe sufficient to allow the Tribe to operate as a 'tribal

retailer' in full compliance with the terms and conditions of the [original Squaxin] Compact.

D. *Procedural History*

On February 6, 2008, Nisqually filed a lawsuit challenging the Agreement on three grounds[6]: (1) the Agreement violates the 1994 Act; (2) the Addendum violates state law; and (3) the Addendum constitutes a breach of the Nisqually contract. Both sides moved for summary judgment and the district court granted Defendants' motion while denying Nisqually's. Nisqually appeals.

## STANDARD OF REVIEW

We review *de novo* a district court's order granting summary judgment. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). We must determine whether there are any genuine questions of material fact and whether the district court correctly applied the law. *Id.* All inferences must be drawn in favor of the nonmoving party. *Id.*

## DISCUSSION

### I.   Nisqually has no right of action under the 1987 Act or the 1994 Act.

On appeal, Nisqually argues that the Agreement violates either the 1987 Act or the 1994 Act. We need not address Nisqually's arguments as to the merits of this claim, because neither the 1987 Act nor the 1994 Act provides a private right of action under which Nisqually may challenge the Agreement.

---

[6]Nisqually initially argued before the district court that Bridges' lease to Squaxin was not properly approved by the Secretary of the Interior. Because this argument was not presented in Nisqually's opening brief on appeal, it is waived. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.7 (9th Cir. 1999).

**[1]** A plaintiff may only bring a cause of action to enforce a federal law if the law provides a private right of action. *See First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121 (9th Cir. 2000). The ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568-77 (1979). However, an implied right of action is only authorized when there is clear evidence Congress intended such a right to be part of the statute. *Transamerica Mort. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 23-24 (1979).

## A.  The 1987 Act and the 1994 Act

**[2]** Nisqually does not dispute that neither the 1987 Act nor the 1994 Act provides an explicit right of enforcement in the statutory text. Thus, our only inquiry is whether either act provides an implied right of action.

**[3]** In *Cort v. Ash*, 422 U.S. 66, 78 (1975), the Supreme Court outlined a four-factor inquiry for determining whether a statute provides an implied right of action. These factors are: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create or to deny [a private right of action]"; (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply" a private right of action; and (4) whether "the cause of action [is] one traditionally relegated to state law." *Id.* (citation and quotation marks omitted). In the context of Indian tribes, we have previously interpreted the fourth factor to turn on determining "whether federal remedies would interfere with matters traditionally relegated to the control of semisovereign Indian tribes." *Solomon v. Interior Reg'l Hous. Auth.*, 313 F.3d 1194, 1197 (9th Cir. 2002) (citation and quotation marks omitted).

**[4]** (1)  Nisqually is not "one of the class for whose especial benefit the statute was enacted." *Cort*, 422 U.S. at 78

(citation and quotation marks omitted). "In applying the first *Cort* factor, courts look to whether the plaintiffs that claim a cause of action exists are specifically mentioned as beneficiaries in the statute." *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004). Nisqually is not mentioned in the statute; the only reference to *any* Indian tribe is found in the 1994 Act's declaration that the Community "is not subject to the jurisdiction of any federally recognized tribe." Indians: Technical Corrections, Pub. L. No. 103-435, § 8, 108 Stat. 4566, 4569-70 (1994). The 1987 Act and the 1994 Act recognize the status of the Community, defining and setting limitations on the Community's ability to self govern. If there is a class, for whose benefit the statute was enacted, that class is the Community alone.

**[5]** (2)  Although *Cort* outlines a four-factor analysis, the Supreme Court has subsequently explained that the second of the four factors raises the dispositive question: "whether Congress *intended* to create" a private right of action. *Transamerica Mortgage*, 444 U.S. at 24 (emphasis added). "The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). Reviewing the text of the Acts, there is no evidence of legislative intent to create a private right of action. The Acts simply recognize and define the Community; nothing suggests an intent to create a private right of action to enforce any particular provision therein.

**[6]** Finding no evidence of such intent in the Acts, we review the legislative history. Such review does not indicate that a private right of action was even considered when drafting and enacting the Acts. The district court noted that one of the "uncontroverted" facts of this case was that "Congress amended [the 1987 Act] in 1994 at the behest of [the Community], whose members feared unilateral annexation into the Nisqually Tribal Reservation." *Nisqually Indian Tribe v. Gregoire*, 649 F. Supp. 2d 1203, 1205 (W.D. Wash. 2009). At the time, Nisqually was considering an amendment to its constitu-

tion which would have annexed the Community. *Id.* If anything, this background militates against finding a private right of action allowing Nisqually to sue under the Acts.

**[7]** (3) A private right of action is also not "consistent with the underlying purposes of the legislative scheme." *Cort*, 422 U.S. at 78. The Acts create and define the Community, grant it certain rights as a "self-governing dependent Indian community," and impose certain limitations (for example, no class III gaming) on its ability to self-govern. This scheme explicitly seeks to establish the Community as "self-governing," not to subject it to outside control through private rights of action to enforce the provisions recognizing and empowering the Community.

**[8]** (4) Finally, the collection of state tobacco taxes in Indian country is a matter relegated to the states and tribes. *See Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 159-60, 161-63 (1980); Wash. Rev. Code § 43.06.450 (granting the governor power to enter into contracts with Indian tribes in Washington to govern tobacco tax collection).

**[9]** *Confederated Tribes* reaffirmed that states have the authority to impose taxes on tobacco sales to non-Indians by Indian retailers. 447 U.S. at 150-51. The Supreme Court noted that the state may attempt to collect such taxes directly or to enter into agreements with tribes—a decision at the discretion of the state. *Id.* at 155-56. Thus, in matters relating to *state taxes*, the state's means of enforcement—whether through direct collection, special contracts with tribes, or simply allowing non-Indian purchasers to "flout [their] legal obligation to pay the tax," *id.*—is an issue of state law. We find nothing in the 1987 Act or the 1994 Act which suggests a federal right of action.

**[10]** After examining the four *Cort* factors, we hold that Nisqually has no private right of action to enforce either the 1987 Act or the 1994 Act.

### B.    Nisqually's Argument

Nisqually does not specifically argue that the 1987 Act or the 1994 Act imply a private right of action. Rather, Nisqually argues that, under *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463 (1976), it has a private right of action stemming from 28 U.S.C. § 1362. We disagree.

**[11]** Title 28 U.S.C. § 1362 confers jurisdiction to federal courts over actions "brought by any Indian tribe . . . wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." *Moe* explained that, pursuant to 28 U.S.C. § 1362, Indian tribes can bring "the kind of claims that could have been brought by the United States as trustee" in federal court. 425 U.S. at 472. Nisqually does not argue, however, that the United States could bring a claim under the 1987 Act or the 1994 Act as trustee for Nisqually in federal court. Instead, Nisqually appears to argue that *Moe* essentially creates a private right of action any time a claim is brought by an Indian tribe. But *Moe* has to do with jurisdiction, not with implied causes of action. There is no authority to support Nisqually's position. Title 28 U.S.C. § 1362 is a jurisdictional statute and *Moe* merely recognizes a tribe's right to bring a claim in federal court which could otherwise be brought by the United States acting as trustee. Since Nisqually has not demonstrated that the United States could have brought an action as trustee in this matter, see *Moe*, 425 U.S. at 472, we cannot entertain a private right of action under the 1987 Act or the 1994 Act.[7]

---

[7]Nisqually seems to assert a federal common law cause of action. Relying on *Nat'l Farmers' Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 850-53 (1985), Nisqually argues that federal law "curtail[s]" Nisqually's power and, therefore, its cause of action is rooted in this limitation. Even if *National Farmers* stands for the proposition that a tribe has a cause of action when federal law curtails the tribe's power, Nisqually has not argued *how* the 1987 Act, the 1994 Act, or any other federal law actually "curtails" its power nor explained how its power is so curtailed.

## II. Nisqually has no right of action to challenge the Addendum under state law.

The district court exercised supplemental jurisdiction under 28 U.S.C. § 1367 to reach Nisqually's state law claims. We review this issue because it was appealed to us on the final order of the district court. *See* 28 U.S.C. § 1291. We conclude that Nisqually has no right of action to bring state law claims under the Washington tobacco contracting laws, Washington Revised Code § 43.06.450 *et seq.* Though we analyze whether a private right of action exists under state law, we note that Nisqually makes no direct argument that such a right exists.

**[12]** Nisqually does not dispute that the relevant Washington laws do not *explicitly* provide a private right of action. Thus, our inquiry again turns on whether Nisqually has an implied right of action under state law.

Washington courts analyze implied private rights of action using a two-step analysis. The first threshold question is whether the statute "creates a right or obligation without a corresponding remedy." *Ducote v. Dep't of Soc. & Health Servs.*, 222 P.3d 785, 787 (Wash. 2009) (en banc). If such a right exists, Washington courts use a three-part inquiry to determine whether an implied right of action exists, asking: "[1] whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; [2] whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and [3] whether implying a remedy is consistent with the underlying purpose of the legislation." *Id.* (citation and quotation marks omitted).

**[13]** Addressing the threshold question, we find that the Washington tobacco contracting laws do not establish a right without a corresponding remedy. While the statutes grant the governor authority to enter into contracts, nothing *requires* the governor to take such action. *See* Wash. Rev. Code § 43.06.455(1) ("[t]he governor may enter into cigarette tax

contracts"). Thus, rather than provide some enforceable right, the Washington statutes merely establish a discretionary system whereby the state government can enter into tax contracts with Indian tribes. *Compare Bennett v. Hardy*, 784 P.2d 1258, 1262 (Wash. 1990) (en banc) (finding that a statute prohibiting age discrimination in employment contemplates a right to be free from age discrimination) *with Adams v. King County*, 192 P.3d 891, 899 (Wash. 2008) (en banc) (finding the Washington Anatomical Gift Act "creates procedures for the procurement of organs, not for the protection of persons who donate organs"). Thus, based on this threshold inquiry, we find no private right of action can be implied under the relevant Washington law.

**[14]** Even if we were to undertake the second step of the analysis, our conclusion would not change. None of the three factors suggests a private right of action on these facts. First, Nisqually is not "within the class for whose 'especial' benefit the statute was enacted." *Ducote*, 222 P.3d at 787 (citation and quotation marks omitted). The law does not mention Nisqually—except when recognizing it as a tribe that may contract with the state, Wash. Rev. Code § 43.06.460—nor does it create a protection by right for any group. Rather, the law grants the governor discretionary authority to enter into contracts and defines the procedure for so doing. Second, nothing in the statute suggests legislative intent to create a private right of action. Indeed, the statute outlines the procedure for entering into tobacco contracts, then explicitly contemplates that any disputes regarding the contract would be governed by the contract and general contract law. *See* Wash. Rev. Code § 43.06.455(13). Third, a private right of action is inconsistent with the underlying purpose of the legislation: to grant the state discretionary authority to enter into tobacco contracts with tribes. *See* Wash. Rev. Code § 43.06.455(1). Allowing a third party, like Nisqually, to challenge a contract arrangement between Washington and another tribe (like Squaxin) runs contrary to this scheme. Thus, we find no private right of action under the relevant Washington laws.

### III.  The Addendum does not breach the Nisqually contract.

Nisqually argues that, by entering into the Addendum, Washington breached the Nisqually contract. Because Nisqually is a contracting party to the contract, Nisqually may bring a breach of contract claim under the contract.

Nisqually argues that the Nisqually contract grants it the exclusive right to sell cigarettes at Frank's Landing and, therefore, Washington breached the Nisqually contract in signing the Addendum. We disagree and affirm the district court's grant of summary judgment against Nisqually on this claim.

[15] Washington courts interpret contracts according to the objective manifestation of the agreement. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (en banc). This means the court focuses on the "objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* Words should generally be given their "ordinary, usual, and popular" meaning. *Id.*

Nisqually bases its argument on the following language of the Nisqually contract. First, the agreement states that "[o]nly tribal retailers are permitted to make retail cigarette sales within Indian country." A "tribal retailer" is defined as a retailer wholly owned by the Nisqually tribe, and "Indian country" includes "all lands placed in trust . . . for individual Indians . . . located in the Nisqually River basin."[8] Nisqually reads these three sentences together to suggest that only members of Nisqually may sell cigarettes in Indian country within the Nisqually River basin—meaning only Nisqually members could sell cigarettes at Frank's Landing.

---

[8]This use of "Indian country" refers only to Indian country as defined in the Nisqually contract, that is, Indian country with a connection to Nisqually (as opposed to "Indian country" as used in the Squaxin contract or the general legal meaning of the term).

**[16]** Nisqually reads these parts of the contract out of context in order to argue it has territorial exclusivity. The first statement, relied on by Nisqually ("only tribal members are permitted . . ."), is the only sentence of the contract under the heading "Other Retail Sales within Indian Country *by tribal Members*." (emphasis added). The contract defines a "Tribal member" as "an enrolled member of the Nisqually Tribe." This heading, read together with the clause Nisqually relies on, demonstrates that the contract was only intended to apply to Nisqually retailers operating within the basin. Thus, while the Nisqually contract gives Nisqually exclusive jurisdiction over its own tribal retailers operating in Indian country within the basin, it does not apply to members of Squaxin.

Additionally, Nisqually's argument is not supported by the record. During negotiations, Nisqually sought an agreement that cigarette sales would not be permitted at Frank's Landing and sought a 20 mile buffer around the Nisqually reservation for exclusive selling rights. Washington rejected this 20-mile radius and said, as to Frank's Landing, "we will only negotiate with federally recognized tribes [when negotiating contracts] . . . . The Frank's Landing Community is not a federally recognized Indian tribe." This is not an assurance that *no sales* would be allowed at Frank's Landing.

## CONCLUSION

**[17]** We conclude there is no private right of action under either the 1987 Act or the 1994 Act which would enable Nisqually to bring an action to enforce the Acts' provisions. Further, the Washington tobacco contract legislation, Wash. Rev. Code § 43.06.450 *et seq.*, contains no private right of action which would allow Nisqually to bring suit to enforce those laws. Finally, the Addendum does not constitute a breach of the Nisqually contract. Accordingly, the judgment of the district court is **AFFIRMED**.