IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| NORMA ACOSTA and GILBERT ACOSTA, individually, and the marital community comprised thereof, | )<br>)<br>)<br>) |
| Appellants, | )<br>) |
| v. | ) |
| CITY OF MABTON, a municipal corporation, | )<br>)<br>)<br>) |
| Respondent. | ) |

No. 35159-9-III

PUBLISHED OPINION

LAWRENCE-BERREY, A.C.J. — In January 2012, a City of Mabton (City) sewer line became clogged and several inches of raw sewage backed up into the basement of Norma and Gilbert Acosta's house. The Acostas sought damages against the City and asserted several causes of action. The trial court summarily dismissed the Acostas' causes of action on the basis that the Acostas failed to explain how the blockage occurred.

The Acostas appeal the summary dismissal of their causes of action. They assert that a trier of fact could reasonably find that the blockage was caused by solidified grease rather than an 8½ inch ball, as the City claimed. In making this assertion, they set forth

plausible arguments why a trier of fact might reasonably disbelieve City employees who claim that an 8½ inch ball had blocked the 10 inch line. The Acostas further assert that if the blockage was caused by solidified grease, the City's practice of not maintaining the sewer lines and merely waiting for blockages to occur constitutes negligence. Because a trier of fact could reasonably find that solidified grease caused the blockage and because a municipality breaches its duty of care by simply waiting for blockages to occur, we reverse the trial court's summary dismissal of the Acostas' claims.

## GENERAL STANDARD FOR REVIEWING SUMMARY JUDGMENTS

"When reviewing dismissal of a case on summary judgment, we employ the same inquiry as the trial court under CR 56(c)." *Ducote v. Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 701, 222 P.3d 785 (2009). "On a motion for summary judgment, all facts submitted and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party." *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). With this in mind, we set forth the facts favorably to the Acostas.

## FACTS

The Acostas own a home near 6th and B streets in Mabton. During the morning of January 12, 2015, the City's sewer system backed up and raw sewage flooded the basement of the Acostas' home. Mrs. Acosta called the City to report the problem. City

public works employees Noe Trujillo, Michael Mendoza, and Erik Van Doren responded to clear the blockage. The employees were able to determine the approximate location of the blockage by removing various manhole covers and looking into the manholes and noticing where the sewer flowed and did not flow. At around 9:00 p.m., the public works crew cleared the blockage.

Once cleared, raw sewage flowed so quickly that 5,000 to 10,000 gallons of sewage escaped from a downstream manhole temporarily uncovered by the public works crew. The resulting contamination required City employee Mendoza to send a written report of the day's events to the Department of Ecology. In the report, Mendoza makes reference to "the blockage" multiple times; but not once does he mention a ball. The City also took pictures of the manhole after the blockage was cleared above the manhole. The purpose of the pictures was to show what had created the blockage. One can see significant clumps of grease in the manhole. One cannot see a ball.

Months later, because the City still had not assisted the Acostas with their extensive property damage, Mrs. Acosta went to a City Council meeting to complain to the mayor. In response to her complaint, Mayor Mario Martinez said:

3

> "A lot of times we have grease problems. Everybody knows that. We know that when it does get backed up, it is . . . it ends up right there for whatever reason. That's where it ends up in the system . . . it's on B Street and Sixth . . . near Sixth Street. And that's where everything tends to end up and it starts to back up from there."

Clerk's Papers (CP) at 416.

The Acostas brought suit against the City on various legal theories, including negligence. The City denied liability. When deposed by the Acostas, Mayor Martinez testified that after the City crew dislodged the blockage, he looked into the manhole immediately downstream and saw debris, including a "'mostly inflated'" ball. CP at 198. He described the ball as about the size of a "'beginner's basketball.'" *Id.*

In their depositions, City public works employees Mendoza and Trujillo described the City's maintenance of its sewer system. According to both, the City had problems with grease clogging the sewer lines. As temperatures became colder, the grease solidified and sometimes caused clogs. Until one or two years before the Acosta blockage, the City cleaned its entire sewer system from the highest elevation to the lowest elevation once or twice a year through a process known as jet rodding. In addition to jet rodding, the City poured a product into the system called "Fireball" that melted the solidified grease all the way to the City's sewer plant.

4

The City's practice changed a year or two before the Acosta blockage. When Mr. Martinez became mayor, he changed the City's emphasis from maintaining the sewer system to only responding to blockages. Employee Trujillo explained that clearing a blockage simply moved the blockage lower in the system:

> [W]hen the guys . . . were jet rodding and that's the way they showed me, we have to start from the highest point towards the bottom to pull everything down towards the sewer plant. . . .

CP at 322.

> [But] if you're jumping from one side to the other, if you're up on a high spot and you unplug a major line, obviously it's going to plug down towards the bottom somewhere. . . .

CP at 322. Trujillo further explained:

> [L]ike I said, we weren't jet rodding for at least a year or so, a year or two, because we had other things, our boss had other things on his mind than jet rodding.
> . . . .
> . . . But if they would jet rod, like I said, at least once or twice a year, they would eliminate that problem. Because, like I said, there is a lot of stuff in there, a lot of grease, and if they continue jet rodding, they would eliminate those problems.

CP at 301, 318.

According to Trujillo, because of the City's changed emphasis from maintaining the system to responding to blockages, more sewage backups

5

occurred. When asked what caused the sewer to back up into the Acostas'
basement, Mendoza answered, "[a] lot of grease." CP at 348.

Once the parties completed discovery, the City moved to have the trial court
summarily dismiss the Acostas' claims. The City argued that an inflatable ball
caused the blockage, that such a blockage would have caused the sewer to quickly
backup, and that it was not negligent for failing to quickly discover the blockage.
Mayor Martinez and City employees Mendoza and Van Doren claimed that the
blockage was caused by an inflatable ball. In addition, the City's expert opined
that the blockage of the 10 inch sewer line could not have occurred absent the
introduction of the 8½ inch ball into the line.

The Acostas responded mostly by impeaching the claim that an 8½ inch ball
caused the blockage. The Acostas impeached Mendoza with his own deposition.
In his deposition, Mendoza admitted that he only once saw a ball in a manhole, but
could not recall whether it was in relation to the January 12, 2015 Acosta
blockage.

The Acostas responded also by attaching the report of their expert, industrial hygienist Susan Evans.[1] Ms. Evans explained that the City's maintenance of its system during the year or two before the Acosta blockage was deficient. Ms. Evans noted that there are two nearby schools with cafeterias that discharge grease. She further noted:

> A study by the American Society of Civil Engineers reports that the most important maintenance activities for operation of a sanitary sewer system is cleaning. [The study recommends] that 29.9% of the system should be cleaned each year. A review of the [City's] maintenance logs . . . showed significantly less than 30% of the system is cleaned each year.

CP at 202 (footnote omitted).

She also explained why she did not believe the City's claim that an 8½ inch ball got into the sewer line. A ball about the size of a kid's basketball is much too large to enter the system through a toilet or other plumbing fixture. Also, the City's sewer system is not combined with a stormwater system. For these reasons, the only way such a ball could enter the sewer line is by it being rolled or dropped into a manhole. Ms. Evans

---

[1] In its response brief, the City renews its motion to strike Ms. Evans's report. The report was attached as an exhibit to opposing counsel's summary judgment declaration. The trial court denied the City's motion to strike because the report was unquestionably Ms. Evans's report, it was submitted to the City during discovery, and the City questioned Ms. Evans extensively about it during her sworn deposition. We find no abuse of trial court discretion and deny the City's renewed motion to strike. *See, e.g., Young Soo Kim v. Choong-Hyun Lee*, 174 Wn. App. 319, 326-27, 300 P.3d 431 (2013) ("Courts do not always demand strict compliance with the express requirements of CR 56(e), due to the potentially drastic consequences of a summary judgment motion, particularly with respect

explained that manholes are covered, and manhole covers weigh between 90 and 150 pounds.[2]

The trial court noted that Ms. Evans did not directly state what caused the sewer line to backup. The trial court believed that without clear evidence as to the cause of the backup, Ms. Evans's opinion that the City's maintenance was deficient would be inadmissible. For this reason, the trial court summarily dismissed the Acostas' claims.

The Acostas appealed.

## ANALYSIS

A.    SUMMARY JUDGMENT AND IMPEACHMENT OF MOVING PARTY

A party may move for summary judgment by setting out its own version of the facts. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006). It is then incumbent on the nonmoving party "to present admissible evidence demonstrating the existence of a genuine issue of material fact." *Id.* at 351.

---

to the nonmoving party.").

[2] The Acostas take this argument further: The mayor originally described the ball as "mostly inflated." Ms. Evans testified, "I can rule [the ball's presence] out based on his description of the ball [as] mostly inflated." CP at 267. She explained that a mostly inflated ball almost the diameter of the sewer line could not sink beneath the level of the sewer in a manhole in order to enter the sewer line.

8

Sometimes a material "fact" is particularly within the knowledge of the moving party and the nonmoving party cannot directly contradict it. In those situations, the nonmoving party may create a genuine issue of material fact by impeaching the moving party's witness or witnesses. *Dunlap v. Wayne*, 105 Wn.2d 529, 536, 716 P.2d 842 (1986). In those situations where a proponent's "fact" reasonably might be disbelieved, "'it is advisable that the cause proceed to trial in order that the opponent . . . be allowed to disprove such fact[ ] by cross-examination and by the demeanor of the [witness] while testifying.'" *Brown v. Brown*, 157 Wn. App. 803, 820, 239 P.3d 602 (2010) (internal quotation marks omitted) (quoting *Riley v. Andres*, 107 Wn. App. 391, 395, 27 P.3d 618 (2001)).

Here, a trier of fact could reasonably disbelieve the City's witnesses that its 10 inch sewer line was blocked by an 8½ inch ball. First, City employee Mendoza's nearly contemporaneous report to the Department of Ecology does not describe the blockage as being caused by a ball. Second, Mayor Martinez's response to Mrs. Acosta's complaint during the City Council meeting does not mention a ball. Instead, Mayor Martinez discusses a history of blockages near the Acosta home as being due to the lines being blocked by grease. Third, City employee Mendoza's statements are inconsistent as to whether he saw a ball in the manhole after the Acosta blockage was cleared. Fourth,

9

there is no credible explanation of how an 8½ inch ball could get into a 10 inch sewer line. The idea that a strong person removed the heavy manhole cover, climbed into the raw sewage, and inserted the ball into the sewer line is not a theory a finder of fact needs to believe.

A trier of fact could also reasonably disbelieve the City's expert that the blockage in the 10 inch sewer line would not have occurred in the absence of an inflatable ball. The mayor and City employees discussed the line in question and agreed that it often became blocked with grease. Employees Mendoza and Trujillo testified consistently that only once did they see a ball in a City manhole, and Trujillo testified he saw a ball years before the Acosta blockage and in a different part of the City. There is no evidence that the City's history of blocked sewer lines had anything to do with large objects such as balls in the lines. In fact, Mendoza testified that the cause of blocked lines is "mostly always grease." CP at 352. Trujillo also described how the City's recent practice of dislodging blockages in the sewer lines simply led to blockages lower in the City's lines.

We conclude that the Acostas sufficiently rebutted the City's theory that a foreign object such as a large ball caused the blockage that led to their damages. The Acostas produced sufficient evidence that the accumulation of grease, solidified by cold winter temperatures, caused the blockage.

10

## B.    NEGLIGENCE OF THE CITY

In an action for negligence, the plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) a resulting injury, and (4) proximate cause linking the breach to the injury. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 605, 257 P.3d 532 (2011).

### 1. Duty of municipalities to maintain and repair sewer systems

A municipality has a duty to exercise reasonable care in the repair and maintenance of its sewage systems. *Kempter v. City of Soap Lake*, 132 Wn. App. 155, 158, 130 P.3d 420 (2006). This "'duty to keep its sewers in repair, is not performed, by waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of the officials is called to the damage they have occasioned by having become dilapidated or obstructed.'" *Vittucci Importing Co. v. City of Seattle*, 72 Wash. 192, 195, 130 P. 109 (1913) (quoting *McCarthy v. City of Syracuse*, 46 N.Y. (1 Sickels) 194, 197-98 (1871)). "'Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear is a neglect of duty which renders the city liable.'" *Id.* at 196 (quoting *McCarthy*, 46 N.Y. at 198).

### *2. Breach of duty*

Here, City employees testified that during the one or two years preceding the Acosta blockage, the City's practice of maintaining its sewer system was limited to responding to obstructions. Based on this testimony, a trier of fact could find that the City breached its duty to the Acostas.

### *3. Resulting injury*

The City does not dispute that the Acostas were injured when sewage backed up into their basement.

### *4. Proximate cause*

"Proximate cause can be divided into two elements: cause in fact and legal cause." *Michaels*, 171 Wn.2d at 609. "'Cause in fact' refers to the actual, 'but for,' cause of the injury.'" *Id.* at 610 (internal quotation marks omitted) (quoting *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998)). Legal cause refers to policy considerations of whether the defendant's act was too remote or insubstantial to impose liability. *Id.* at 611. The City argues that the Acostas failed to establish cause in fact.

"'Establishing cause in fact involves a determination of what actually occurred and is generally left to the jury.'" *Id.* at 610 (quoting *Schooley*, 134 Wn.2d at 478). The mayor and City employees Trujillo and Mendoza admitted that the City's lines often were

12

blocked by grease, especially near the Acostas' home. Trujillo explained that as the temperatures dropped, the grease solidified and blocked the lines. Only once did Trujillo and Mendoza see a ball in a manhole. The evidence that grease and only grease had historically caused the City's sewer lines to be blocked refutes the City's position that the Acosta blockage would not have occurred but for a large object such as a ball in the sewer line.

Trujillo further testified that for the year or two preceding the Acosta blockage, the City's practice of clearing blockages only caused the blockage to be moved lower in the City's lines. When asked what caused the Acostas' blockage, Trujillo answered, "a lot of grease." CP at 348. Trujillo's answer is consistent with the pictures of the manhole that show only grease, Mendoza's report to the Department of Ecology that does not mention a ball, and the mayor's statement during the council meeting that mentions only grease.

Here, the Acostas submitted sufficient evidence for a trier of fact to reasonably find that the sewer blockage of January 12, 2015, was caused by solidified grease. The City knew that grease accumulated in the sewer lines near the Acosta home. Despite this, the City's procedures for a year or two did not involve clearing the grease from this area. For these reasons, a trier of fact could reasonably find that the City's breach of its duty to maintain its sewer lines was the cause in fact of the Acostas' damages.

13

No. 35159-9-III
*Acosta v. City of Mabton*

Reversed.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____ (result only)
Korsmo, J.

_____
Pennell, J.

14